[Civil No. 4224.   Filed September 23, 1940.]

[105 Pac. (2d) 517.]

KENNETH DICKERSON, Appellant, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, Appellee.

Messrs. O'Sullivan & Morgan, Mr. J. H. Morgan and Mr. E. C. Locklear, for Appellant.

Mr. Theodore G. McKesson, Mr. W. E. Patterson, Mr. I. Eastvold, Miss M. E. Darrow and Mr. Yale McFate, for Appellee.

LOCKWOOD, J.—Kenneth Dickerson, hereinafter called plaintiff, brought this action against Hartford Accident and Indemnity Company, a corporation, hereinafter called defendant, to recover on an accident policy issued by it in favor of plaintiff. The case was tried before a jury, and at the close of plaintiff's case the court instructed a verdict in favor of defendant, whereupon the case was brought before us for review.

While there are several assignments of error, the only question necessary for us to consider on the appeal is whether there was sufficient evidence presented by plaintiff to take the case to the jury, for if there was, the court erred in directing a verdict.

Plaintiff's evidence, briefly summarized, may be stated as follows: On May 12, 1938, he was traveling between Tucson and Safford, and had a blowout on the right front tire of his automobile. He started to change the tire, and while doing so overbalanced and an undue amount of weight was thrown on his left foot. He felt a sharp pain therein and believed that he had wrenched it, but paid no further attention to it and finished changing the tire. His foot did not bother him during the rest of the day, except that he noticed in walking he favored it to some extent. The next morning the foot was swollen and pained severely, and he called in a doctor. An X-ray was taken of the foot and it was placed in a cast, and he then went to Phoenix and afterwards to Prescott. On May 14th he saw Dr. Lytton-Smith in Phoenix, who cut away a part of the cast and applied a walking iron to the foot, which took the weight of the body off of the foot and placed it upon the iron. He remained in Prescott about a week and then returned to Phoenix and again consulted Dr. Lytton-Smith, entering a hospital in Phoenix on May 22d. At that time he was entirely disabled from any physical activities by reason of the condition of his

foot. He remained in the hospital from May 22d to June 29th, when he was discharged as being able to get around in a wheel chair, and then returned to Prescott. From June 30th to November 1st he could perform about half of his regular duties. His claim was first for total and then partial disability and medical expenses, up to November 1, 1938.

The policy in question contains the following conditions:

"Hartford Accident and Indemnity Company . . . insures Kenneth Dickerson . . . against loss caused directly and exclusively by bodily injury sustained solely and independently of all other causes through accidental means."

" . . . nor shall this insurance cover death, disability or any other loss caused directly or indirectly, wholly or in part, (1) by ptomaines, (2) by bacterial infections (except pyogenic infections which shall occur simultaneously with and through an accidental cut or wound, (3) by any other kind of disease."

It was the contention of defendant (a) that plaintiff suffered no accidental injury of any nature, within the meaning of the policy, and (b) that even though he did suffer an accident, the injury and disability for which he claims compensation was caused either wholly or in part by some kind of "disease" not covered by the policy.

■ So far as the evidence of the accident is concerned, we think plaintiff's testimony was sufficient to go to the jury. He stated, in substance, that he was engaged in changing a tire, became overbalanced and threw his weight in an unusual manner on his left foot, and felt a sharp pain immediately thereafter. The medical evidence is to the effect that the X-rays, which were taken immediately after the accident, together with a history of the case, showed a condition which was reasonably diagnosed as being a bone injury due to a trauma caused by his overbalancing. Defend-

ant's principal defense, however, is based upon the proposition that the evidence of plaintiff shows affirmatively that his disability was caused in part at least by a disease called gout, and that under the terms of the policy, if this be true, plaintiff could not recover.

We have had before us, in the case of *New York Life Ins. Co.* v. *Greber*, 55 Ariz. 261, 100 Pac. (2d) 987, a question of law very similar to the one under consideration in the present case. The policy in that case contained a provision that the death of the insured must have

"resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause."

It will be seen that this, though differing much in language, is the same in legal effect as the clause under consideration in the present policy, and while the claim in the Greber case was based on the death of the insured, the principle involved is the same when compensation for disability is involved. We said:

" . . . If the question is whether the death resulted solely from accidental causes, the test is as follows: (a) when an accident causes a diseased condition which, together with the accident, results in death, the accident alone is considered the cause of death; (b) when at the time of the accident the insured was suffering from some disease, but such disease had no causal connection with the death resulting from the accident, the accident is the sole cause of the death, and (c) when at the time of the accident there was an existing disease which, cooperating with the accident, resulted in the death, the accident cannot be considered as the sole cause, independent of all other causes. . . . "

If plaintiff in the present case comes under rule (c), as above set forth, he is not entitled to recover. If he falls under (a) he is. There is no contention that he came within clause (b). The medical testi-

mony bearing on this point agrees in substance, and is as follows: The real cause of plaintiff's disability was a disease called gout, the origin and progress of this disease being as follows. For some unknown cause, the metabolism of the human body may be upset in such a manner that the uric acid, which is normally excreted, remains in solution in the blood in an abnormal quantity. This condition may continue indefinitely, and, if nothing further occurs, the individual may continue his normal occupation with no decrease of vigor or ability; he is not conscious of any change in his physical condition and presents no objective symptoms of departure from the normal, except that an analysis of the blood shows the excess uric acid. If, however, at any time while this condition exists, one of a number of circumstances, among them being trauma, occurs, the uric acid may be precipitated in the form of urate of sodium in and about the joints, particularly the great toe, and a violently inflamed condition may ensue, which may be completely disabling over a considerable period of time. The testimony of all of plaintiff's medical witnesses is that an excess of uric acid in plaintiff's blood undoubtedly existed before the accident. It is equally unanimous, based on his previous history, that until the accident there had never been disability or objective symptoms of any nature indicating gout, and that such condition would probably have continued indefinitely in the absence of other exciting causes, and that the trauma was the cause of the latent condition flaring into activity.

It is the contention of plaintiff that his condition, as above set forth, did not become a "disease," within the meaning of the policy, until the trauma had caused the precipitation of the uric acid, as aforesaid. It is the position of defendant, on the other hand, that the moment the uric acid appeared in such quantity

that it might be precipitated by some exciting cause that a "disease" existed, even though it might not have become apparent in the absence of the trauma. In other words, plaintiff says the trauma *caused* the disease, while defendant claims it only *aggravated* it.

The question for us then is, what is meant by the term "disease" as used in the policy, for the answer to this will determine whether the court erred in granting a directed verdict. In passing on this question, we must remember that policies of this nature are construed in favor of the injured when any ambiguity appears therein. We must also consider the fact that those who are insured by policies of this nature are generally, as in the present case, not highly trained medical specialists but ordinary laymen. Under these circumstances, we think we should adopt the definition of the word "disease" which would naturally be accepted by the average layman, rather than a highly technical medical definition, if there is a conflict between the two. Webster gives two definitions of "disease." The first is "a condition in which bodily health is seriously attacked, deranged or impaired," and the second—a pathological definition—is "an alteration of state of the human body . . . or some of its organs or parts, interrupting or disturbing the performance of the vital functions."

We think these definitions represent the sense in which "disease" is understood by the layman, and that they imply a condition which either has impaired, or presumably will impair, *if it continues in its usual course of progress,* the normal working of some of the bodily or mental functions. An example of the last class is a cancer, which even in its earliest stages is a disease, for while the victim may not for some time suffer any impairment of the bodily functions, if that cancer continues to develop in its normal manner,

sooner or later death ensues. In the present case, according to the medical authorities, the excess of uric acid, which presumably existed in the plaintiff, would probably have continued indefinitely without ever developing to a stage which the ordinary layman and the definitions above cited give the name of "disease," in the absence of some exciting cause, and was in all probability brought to that stage by the precipitating agency of the trauma.

We think that under the correct definition of "disease" as applied to insurance contracts of the nature involved herein, and the rules set forth in the Greber case, *supra*, there is evidence in the record from which the jury might fairly have found that plaintiff's case fell within rule (a) rather than rule (c). Such being the case, the trial court erred in instructing a verdict for defendant.

The judgment is reversed, and the case remanded with instructions to grant a new trial.

ROSS, C. J., and McALISTER, J., concur.