[No. 28563. Department Two. March 13, 1942.]

ANNIE HAMILTON, *Respondent,* v. WASHINGTON NATIONAL INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 123 P. (2d) 343.

*DuPuis & Ferguson,* for appellant.

*Caldwell, Lycette & Diamond,* for respondent.

BLAKE, J.—Plaintiff brought this action to recover death benefits under an accident insurance policy issued by defendant to her father, S. J. Stevens. The cause was tried to a jury, which returned a verdict in favor of plaintiff. From judgment entered on the verdict, defendant appeals.

The primary question presented is whether the evidence was sufficient to take the case to the jury. A secondary question is raised upon the giving of an instruction and the refusal to give three requested instructions.

■ ■ *First:* The policy contained the following provisions:

"Section VII—Benefits for exceptional cases. The company's liability under this policy for any loss or for any disability under the following conditions shall be limited to an amount equal to one month's benefits, as provided in paragraph 3 of Section III: (a) if 'such injury' is sustained: (1) while fighting, . . . ; (b) if 'such injury' results in or is caused, wholly or in part, by . . . embolism, . . . ."

Stevens died the night of March 1, 1940, shortly after refereeing a heavyweight wrestling match at the civic auditorium in Seattle. Up to the time of his death, he had been a robust man, standing more than

six feet and weighing over two hundred pounds, and very active physically. Besides acting as referee at wrestling bouts, he had been accustomed to play golf and dance several times a week. The circumstances of his death are as follows:

At the end of the match, he indicated one of the contestants as the winner. The other struck him in the face, felling him to the floor, near the edge of the ring. Pursuing him, the wrestler kicked him twice. Stevens rolled over and fell from the ring to the concrete floor of the auditorium—a distance of between three and four feet. He was picked up unconscious and carried to a dressing room, where he died ten or fifteen minutes later. He sustained a wound on the head from which blood flowed while he was being carried to the dressing room. An autopsy was performed and a death certificate was issued, assigning as the cause of death "Coronary Occlusion Coronary Sclerosis due to Infarcts of Myocardium."

The appellant takes the position that the court should declare, as a matter of law, that death was due to one or the other of the above-quoted exceptions contained in the policy: (a) That Stevens died "while fighting"; or (b) that the injury resulted in, or was caused wholly or in part by, an embolism.

(a) Appellant suggests that Stevens was either engaged in or simulated a fight with the wrestler who struck and kicked him. There is no evidence that Stevens struck a blow. Under the evidence, the jury would hardly have been justified in finding that he died "while fighting." In any event, the question was for it to determine. (b) The medical testimony as to the cause of death may be summarized as follows: Three physicians, called by appellant, who examined Stevens's heart testified that he had been afflicted for a long time with coronary sclerosis; that his heart

weighed twice that of a normal heart; and that his death was due to coronary occlusion. One testified positively that death was caused by an ante-mortem clot. One of the others testified:

"Q. From your examination of the organs, what would you attribute the death to? A. Death might easily have been caused by the coronary occlusion. . . . Q. Could you tell whether it was caused by a coronary occlusion? A. I haven't sufficient information on the particular case to answer that question. It might well have been. Q. But you could not state that? A. I could not."

The third physician for the defense admitted:

"You will find clots formed after death with the blood in the heart whether he dies at once. We expect to find that condition just after a blow."

A physician, called by respondent, in answer to a hypothetical question, testified that Stevens died of shock resulting from the injuries he sustained from the blow, the kicks, and the fall from the ring to the floor. Considering the facts and the circumstances surrounding Stevens's death, it would seem clear, in the light of this medical testimony, that the cause of death was a question for the jury to determine.

But appellant, citing *Anton v. Chicago, M. & St. P. R. Co.*, 92 Wash. 305, 159 Pac. 115, argues that medical testimony resting solely upon a hypothetical question is insufficient to take a case to the jury. The court there said, p. 308:

"The witness was a general practitioner who assumed no special skill in the science of orthopedy, and who had not, therefore, had the case under his personal supervision. The case was taken from the jury after all the evidence was in. Taking the opinion of the witness for the appellant [plaintiff], as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result

of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon."

These observations, however, must be read in the light of the facts which the court had before it. The plaintiff there was seeking to recover damages for a tubercular condition of his shoulder, which he attributed to a wrench or sprain sustained seven months before. In the meantime, he had continued work "under full pay without interruption." That the above-quoted portion of the opinion was not intended to lay down a specific rule for general application, is manifest from the following, p. 312:

"We are not to be understood as limiting the extent or scope of medical expert testimony or proper prognosis based upon established facts. That is a very different thing from what is attempted in this case, which is to fix a proximate cause for a disease become suddenly aggressive seven months after a slight injury, and which may have developed from some other cause or without traumatic intervention."

Referring to medical testimony based upon hypothetical questions, the court, in *Cooper v. Department of Labor & Industries*, 11 Wn. (2d) 248, 160, 118 P. (2d) 942, said: "As the evidence stood in this case, it would have sustained a jury verdict for either party." We are of the view that, under all the evidence, including the medical testimony, the question whether Stevens died as the result of shock from his injuries or as the result of an embolism was for the jury. The following decisions upon facts kindred to the ones in the case at bar support this view: *Aetna Life Ins. Co. v. Ward*, 140 U. S. 76, 35 L. Ed. 371, 11 S. Ct. 720; *White v. Standard Life Ins. Co.*, 95 Minn. 77, 103 N. W. 735, 884; *Ward v. Aetna Life Ins. Co.*, 82 Neb. 499, 501,

118 N. W. 70, and *Ward v. Aetna Life Ins. Co.*, 85 Neb. 471, 123 N. W. 456; *Nat. Masonic Acc. Ass'n v. Shryock*, 73 Fed. 774; *Maryland Casualty Co. v. Morrow*, 213 Fed. 599; *Aetna Life Ins. Co. v. Ryan*, 255 Fed. 483; *Standard Acc. Ins. Co. v. Hoehn*, 215 Ala. 109, 110 So. 7; *Hill v. Great Northern Life Ins. Co.*, 186 Wash. 167, 57 P. (2d) .405; *Dickerson v. Hartford Acc. & Indemnity Co.*, 56 Ariz. 70, 105 P. (2d) 517.

*Second:* Instruction No. 9, complained of by appellant, in substance, presented to the jury the question we have just stated. Commenting on the instruction, appellant says: "There was no issue on this matter at all. The evidence was simply all one way on that question and the jury should have been instructed to bring in a verdict. . . ." In view of what we have said concerning the sufficiency of the evidence, comment upon the propriety of the instruction is unnecessary.

Appellant's first requested instruction was, in substance, for a directed verdict. The court properly refused to give it. By its requested instructions Nos. 2 and 5, appellant asked the court to instruct the jury that, if they found that Stevens died of a heart attack, or that he had been afflicted with a heart ailment which contributed to his death, their verdict must be for the defendant. We think the requests were fairly and adequately presented to the jury in the court's instructions Nos. 9 and 10.

Judgment affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.