422 P.2d 704

**Mary M. Ellis MALANGA, Appellant,**

**v.**

**ROYAL INDEMNITY COMPANY, a foreign corporation, Appellee.**

**No. 8878–PR.**

Supreme Court of Arizona.

In Banc.

Jan. 18, 1967.

Rehearing Denied Feb. 21, 1967.

Murphy & Vinson, and Carl E. Hazlett, Tucson, for appellant.

Lesher, Scruggs, Rucker, Kimble & Lindamood, Tucson, for appellee.

UDALL, Justice.

This matter is before us on petition to review the decision of the Court of Appeals, Division 2, reported in 4 Ariz.App. 150, 418 P.2d 396.

The appellant, Mary M. Ellis Malanga, instituted this action in superior court against the Royal Indemnity Company, seeking to recover $30,000 allegedly due to appellant as beneficiary of an accident insur-

ance policy which the Company had issued to Jack S. Ellis, who at the time of his death was the husband of appellant. The trial court, sitting without a jury, rendered judgment for the Company and the Court of Appeals affirmed.

The following facts are undisputed:

(1) In March of 1963 Jack Ellis died from on over-ingestion of barbiturates and alcohol, the latter being contained in an intoxicating beverage or beverages which were consumed by the deceased.

(2) The deceased *did not* consume a quantity of alcohol which alone would have been sufficient to cause death.

(3) The deceased *did not* consume barbiturates in an amount sufficient to cause death.

(4) Death resulted from the combined effect of the alcohol and the barbiturates upon the central nervous system of the deceased. Briefly, this effect was described by the following question to which plaintiff's witness responded on cross examination:

"Q. So when we talk about this particular death, we are talking about a man who took enough alcohol and barbiturates into his system to a point where his heart stopped beating, is that essentially it doctor?

"A. Yes. Yes."

In addition to the above facts which are established by the evidence, the record which was before the trial court indicates that there is no issue of suicide in this case. It appears that the parties were and on this appeal are in agreement as to the following points:

(1) Jack Ellis voluntarily and intentionally consumed the intoxicating beverage or beverages which contained the alcohol, and he voluntarily and intentionally consumed the three or four pills which contained sodium amytal.

(2) The deceased did not intend to injure himself or to cause his death; apparently he did not suspect, or know, or have any reason to know that consumption of the

alcohol and barbiturates in the quantities taken would result in injury or death.

On this appeal, as in the trial court, the point of difference between the parties is whether the circumstances described above bring the death of Jack Ellis within the following terms of the accident insurance policy:

"*This insurance is against loss* \* \* \* *resulting directly and independently of all other causes from accidental bodily injuries* sustained during the term of the policy \* \* \* (emphasis added).

"If within ninety days after the date of accident \* \* \* such injury shall result in the Insured's loss of life the Company will pay the amount specified in the Schedule of Benefits [\$30,000]."

With reference to the above provisions of the policy it is the Company's position that the death of Jack Ellis did not result from "accidental bodily injury", as required by the first paragraph quoted above. Of course, appellant's contention is that the death was the result of such injury. As stated by the appellant, the question for our determination is: "Whether the death of Jack Ellis resulted directly and independently of all other causes from accidental bodily injuries?"

The question has been argued and must be answered in two parts: (1) did Jack Ellis suffer "bodily injuries", (2) if so, were the injuries "accidental"? In the absence of findings of fact we assume that the trial court determined both issues in favor of the Company.

As to the question of whether there was bodily injury the following testimony of appellant's witness, elicited on cross-examination, is pertinent:

"Q. Doctor, tell us what happens to a person who has taken an overdose of alcohol, ethyl alcohol and barbiturates. What happens to his system?

"A. Well, as I indicated, these act primarily, this is in a sense not true, it acts primarily on the brain, brain stem \* \* \* The primary site of action is the central nervous system. It is a target organ. It causes a depression of the brain stem. In the brain stem are two important centers, one that controls respiration and one that controls heart rate. This is why we can breathe and out heart will beat automatically. Whether you like it or not, you breathe, your heart beats \* \* \* Now when you start raising the level of either of these two agents, these centers which normally have an automatic regulated stimulus, become interfered with so that the stimulation that normally occurs becomes depressed as the level of these agents goes higher and you can eventually completely remove the stimulus \* \* \* so there is no stimulation to respiration and there would be no stimulation to heartbeat so that death then occurs by depressing these areas sufficiently so that the heart rate would be slow enough or the respiratory center would be slow enough so that the rate of breathing or the heartbeat rate would not be sufficient to sustain life.

\*    \*    \*    \*    \*    \*

"Q. Now was this cause of his death, in your opinion, traumatic in nature?

"A. No, sir.

"Q. There was nothing traumatic that you found in your examination which, in your opinion, contributed to his death?

"A. That's correct.

"Q. In your opinion, was his death due to a bodily injury?

"A. No, Sir."

The above testimony indicates the general nature of the Company's argument that there was no bodily injury, namely, that unless there is a cut, or a bruise or a rupture of some part of the

body, then there has been no bodily injury within the meaning of the accident policy in this case. We cannot agree with this contention. If the Company had intended to limit the words "bodily injury" to injuries which were traumatic in nature, it might easily have done so by simply inserting such a provision in the policy. At best, the fact that such limiting provision is not present makes it uncertain whether the phrase "bodily injury" is so limited. When the language of such a policy is unclear this Court has been and continues to be guided by the general rule " * * * that policies of this nature are construed in favor of the injured when any ambiguity appears therein." Dickerson v. Hartford Accident and Indemnity Company, 56 Ariz. 70, at 76; 105 P.2d 517, 519. Another principle often applied in these cases and applied to this Court in the Dickerson case is that the undefined words of an accident insurance policy will be defined in the common sense terms of the average layman rather than in the terms of a highly technical medical definition.

■ Applying the above principles of the Dickerson opinion to the facts of the case presently before us we find that when the central nervous system of Jack Ellis. was dulled to the point where automatic breathing and heartbeat were not sufficiently stimulated, so as to sustain life, the deceased incurred a "bodily injury" within the meaning of the policy. In the sense in which the term "bodily injury" is ordinarily used and understood, we think it is impossible to conclude otherwise. When a body is so affected that its normal functions are interfered with to the point where death results, the body has been injured. We will now turn our consideration to the question of whether the injury was "accidental".

As briefly as it may be stated the contention of the Company is that the injury was not accidental because the means which caused it were voluntarily and intentionally employed by the deceased. The appellant counters this argument with the claim that the injury was accidental because it was

not intended and not foreseen. In arguing their respective positions the parties proceeded under the erroneous assumption that they were confronted with a question of first impression in this jurisdiction, and that in order for this Court to decide whether the death of Jack Ellis came within the policy provisions we would have to decide the question of whether the words "accidental means", "accidental results", "accidental death" and others, as used in accident policies, are distinguishable and what effect they have upon the liability of the insurer in a given case.

We need not dwell upon the elaborate arguments made by the parties or upon the significance of the scores of cases to which we have been directly and indirectly referred. It is sufficient simply to note that the questions raised on this appeal, including the precise, remaining issue of whether the death of Jack Ellis was "accidental", are not issues of first impression and are answered in favor of the appellant by the principles stated in the opinion of this Court in California State Life Insurance Company v. Fuqua, 40 Ariz. 148, 10 P.2d 958, a case which was overlooked by both parties and which was, apparently, not brought to the attention of the trial court or the Court of Appeals.

In the following language, this Court, in the Fuqua case, in dealing with the term "accidental means" defined the word "accidental", as used in accident insurance policies, and prescribed the test to be followed in order to determine if a result is "accidental", 40 Ariz. 154, 155, 10 P.2d 958, 960:

"The third assignment of error is based upon the theory that the evidence shows conclusively that Fuqua's death did not result from *accidental* means. *Let us then determine the meaning of the word 'accidental,' as used in insurance policies of this nature.* [emphasis added].

"Defendant [insurance company] claims, and supports its claim by many authorities, that 'an effect which is the natural and probable consequence of an

act or course of action cannot be said to be produced by accidental means.' [*NOTE:* this same argument is made by the Company on this appeal.] Giving the language of this definition its ordinary meaning, it cannot be held true, for it is, taken literally, a denial of the possibility of an 'accident,' unless we assume that the attack recently made by some theorists upon the law of cause and effect has been successful. All effects are the natural, probable, and indeed inevitable consequences of definite acts or courses of action, or we must abandon our entire present system of epistemology. The so-called 'accident' is as much the inevitable consequence of one specific act or course of action as is a mathematical conclusion the inevitable result of certain premises.

"If the cases supporting defendant's definition are analyzed carefully, it will be found that what they really mean is that an effect which was or should have been reasonably anticipated by an insured person to be the natural or probable result · of ·his own voluntary acts is not accidental. *Or to put it in the affirmative form, if the result is one which in the ordinary course of affairs would not be anticipated by a reasonable person to flow from his own acts, it is accidental. The test is, what effect should the insured, as a reasonable man, expect from his own actions under the circumstances. Let us apply this test to the evidence."* (emphasis added).

 Applying the above definition and test to the evidence in this case we conclude that the injury of Jack Ellis was "accidental" within the meaning of the accident insurance policy. There is no evidence that the "insured, as a reasonable man", expected or anticipated or desired the injury which resulted from his voluntary acts. He was not attempting to commit suicide or to injure himself. He did not suspect, or know, or have any reason to know that alcohol and barbiturates, when consumed in the quantities which he took,

would produce an injury resulting in death. Both the injury and the death were "accidental", as the term is commonly used and understood.

The judgment of the Court of Appeals in this matter is vacated. The judgment of the trial court is reversed and it is directed to enter judgment in favor of the appellant.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.