475 P.2d 288

**UNITED AMERICAN LIFE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Margaret S. BEADEL, Executrix of the Estate of James D. Beadel, Deceased, Appellee.**

**No. 2 CA–CIV 864.**

Court of Appeals of Arizona, Division 2.

Oct. 13, 1970.

Rehearing Denied Nov. 12, 1970.
Review Denied Jan. 5, 1971.

* The matter is decided under the law as it existed prior to 1 January 1969.

Holesapple, Conner, Jones, McFall & Johnson, by Harrison G. Dickey, Tucson, for appellant.

Wolfe & Greer, by John Greer, Tucson, for appellee.

KRUCKER, Judge.

Plaintiff-appellant, United American Life Insurance Company, sought a declaratory judgment against defendant-appellee, Margaret S. Beadel, as executrix of the Estate of James D. Beadel, to fix its obligations to pay disability coverage under a policy issued to defendant's deceased. The court found in favor of the Estate of the deceased in the sum of $7,726.20, plus interest from July, 1967. Plaintiff's motion for a new trial was denied. Plaintiff now appeals from the judgment and denial of the motion for a new trial.

The facts are as follows. The deceased died in June, 1967. His certified cause of death was poisoning (intoxification) resulting from synergistic action of ethyl alcohol, short-acting barbiturates, and meprobamate. Counsel both concede there was no question of suicide. A due demand was made by the executrix, although the record does not indicate the exact date, for payment of proceeds under defendant's policy. In a letter dated August 24, 1967, plaintiff rejected defendant's request for benefits.

The insurance policy in question is a disability monthly income policy. Attached thereto is an Accidental Death Benefit Rider which provides as follows:

"* * * upon receipt by the Company at its Home Office of due proof of the death of the Insured occurring as a result of bodily injury, the Company will pay, in addition to any other amounts otherwise payable, the Monthly Indemnity * * * from the date of death. * * *

"Bodily Injury. This benefit shall be allowed only if the bodily injury sustained is caused by an accident occurring while this rider is in force and results in death of the Insured within 90 days after the date of the accident. 'Bodily injury' as used in this rider means an injury which is effected directly and independently of all other causes through external, violent and accidental means, as evidenced by a visible contusion or wound on the exterior of the body, except in the case of drowning or internal injuries revealed by an autopsy. The Company shall have the right to examine the body of the Insured and to make an autopsy, unless prohibited by law.

Exclusions. No amount shall be payable under this rider if death results directly or indirectly * * * (2) from any poison or any gas voluntarily, or involuntarily, accidentally or otherwise taken, administered, absorbed, or inhaled, except in the course of the Insured's occupation. * * *"

Taking these provisions, the determination below was based on two separate questions:

(1) Did the insured die of bodily injury?

(2) Did the insured die of bodily injury as a result of poison?

In addition to challenging these questions, plaintiff contends the trial court erred:

(1) In awarding interest.

(2) In placing the burden of proof on the insurer.

We take these issues in order.

The first question is whether decedent died of bodily injury. The policy in question defines bodily injury under the facts here as:[1]

"* * * an injury * * * effected * * * through external, violent and accidental means, as evidenced by * * * internal injuries revealed by an autopsy. * * *"

In Malanga v. Royal Indemnity Company, 101 Ariz. 588, 422 P.2d 704 (1967), the deceased died of the combined effects of alcohol and barbiturates. His accident policy covered loss "from accidental bodily injuries." The Arizona Supreme Court examined whether the death was (1) a result of bodily injuries, and (2) accidental. It held that a bodily injury had indeed occurred because the body's normal functions were so interfered with that death ensued. The Court also held the death was accidental because there was no evidence that the deceased expected or anticipated or desired the injury which resulted. No suggestion of suicide was presented.

The basic difference between Malanga, supra, and the instant case is that here the policy more specifically defines "bodily injury." In Malanga, it was apparently undefined by the policy so the court construed

1. We assume, as counsel concedes, the language requiring "visible contusions, etc.," is inapplicable here.

the terms in their everyday connotation. Consequently, we must inquire whether the "accidental bodily injury" language in the *Malanga* policy is the same or different from the "externally inflicted violent accidental internal injuries" language here.

■ The trial court found as a matter of fact that the death was accidental and the result of internal injuries revealed by autopsy, but since these findings are really mixed questions of law and fact, we review them as legal questions.

■ To begin, the two phrases share several terms, which, since they are not further defined by the policies or which have been defined in *Malanga*, supra, we take as meaning the same in both phrases. First, both policies covered "accidental injuries." Second, *Malanga* held that the synergistic effect of alcohol and drugs was accidental and was a bodily injury. This was determined in the face of the insurance company's insistence that covered injuries must be revealed to be traumatic in nature. Counsel here contends "internal injuries" is different from "bodily injuries", and under the instant policy language must be proven by visible signs and that the mere depression of the central nervous system is insufficient. We believe "bodily injuries" includes "internal injuries" and that *Malanga* settled this contention for both phrases:

> " * * * We cannot agree with this contention. If the Company had intended to limit the words 'bodily injury' [or internal injuries] to injuries which were traumatic in nature, it might easily have done so by simply inserting such a provision in the policy. At best, the fact that such limiting provision is not present makes it uncertain whether the phrase 'bodily injury' [or internal injuries] is so limited. When the language of such a policy is unclear this Court has been and continues to be guided by the general rule ' * * * that policies of this nature are construed in favor of the injured when any ambiguity appears therein.' " 101 Ariz. at 591, 422 P.2d at 707.

This view is also expressed in Stoffel v. American Family Life Ins. Co., 41 Wis.2d 565, 164 N.W.2d 484 (1969).

The remaining limiting words in the instant policy are "externally violently inflicted." Counsel for the insurance company contends these words, along with the language "as evidenced by a visible wound or contusion" qualifies the type of internal injury covered. They again insist traumatic injury, of a type revealed by visible internal or external lesions, is what is covered.

Black's Law Dictionary defines violent, externally caused death as not natural death, such as caused by disease or the wasting of vital forces. Also, in Jahn v. Commercial Travelers Mut. Acc. Ass'n of America, 256 App.Div. 835, 9 N.Y.S.2d 257 (1939), the court held that coverage under an accident policy for death due to "violent external means" was made out for death by carbon monoxide poisoning.

■ We believe the death by alcohol and drugs here fits under both these definitions, and therefore, decedent's death was covered under the accident rider terms as being "an injury effected through external violence and accidental means, as evidenced by internal injuries revealed by an autopsy."

■ The next question is whether the "poison" exclusion in the instant case limits the coverage, in a manner different from *Malanga*. No specific definition for poison is found in the policy. Black's Dictionary defines poison broadly as any substance having an *inherent* deleterious property which renders it, when taken into the system, as capable of destroying life. Commonly speaking, one conjures up such names as arsenic or cyanide.

Plaintiff attempts to define poison as any substance which, when taken, is toxic in fact. We realize it desires to define the term as broadly as possible, but we do not agree that definitions for pharmacological distribution and control purposes, such as those found in A.R.S. § 32–1964, as amended, are helpful.

If the insurance company wished to exclude the kind of incident in question, other wording would have been more appropriate. If insurance companies wish to guard against covering modern, lackadaisical use of drugs and alcohol, they can specifically exclude such coverage. We believe it is the rule to construe undefined terms against the insurer and in common laymen's language. Therefore, we believe this accident is covered by the policy terms and is not excluded as poison. Dickerson v. Hartford Accident and Indemnity Co., 56 Ariz. 70, 105 P.2d 517 (1940); *Malanga, supra;* Brenner v. Aetna Insurance Co., 8 Ariz.App. 272, 445 P.2d 474 (1968).

We conclude the trial court was correct in finding coverage.

Plaintiff next claims the trial court erred in awarding interest. In particular, it contends that since there is no statute or policy term compelling interest be paid, it should not be awarded if there is a bona fide controversy.

We first point out that as a general rule, interest on the amount payable under an insurance policy may be allowed from the date on which payment is due under the policy. 46 C.J.S. Insurance § 1391. This rule *apparently derives from general* rules of damages in actions for breach of contract. E. g., King Realty, Inc. v. Grantwood Cemeteries, Inc., 4 Ariz.App. 76, 417 P.2d 710 (1966).

The rules governing when interest runs apparently vary depending on whether or not the policy contains clauses setting the date when payment is due. Here, the policy states:

"Benefit. Subject to the provisions of this rider and *upon receipt by the Company* at its Home Office *of due proof of the death of the Insured* occurring as a result of bodily injury, *the Company will pay,* in addition to any other amounts otherwise payable, the Monthly Indemnity for 60 months *from the date of death* except that if such death occurs after the Insured's 60th birthday, the Company will pay the Monthly Indemnity for 30 months from the date of death." (Emphasis added)

The record does not show when proof of death was received by the company. However, death was in June and coverage was rejected August 24, 1967. Apparently, the court picked July 1 as a date half way in between. We believe since no exact date was proven, defendant, at most, can claim interest from August 24, 1967.

Lastly, plaintiff contends the trial court erred in holding the burden of proof was on the insurer, citing Pacific Indemnity Co. v. Kohlhase, 9 Ariz.App. 595, 455 P.2d 277 (1969).

We believe the court's December 3, 1969 minute entry here entirely conforms to that case. The court stated:

"IT IS ORDERED that the plaintiff herein, United American Life Insurance Company, shall have the burden of proof to show that the defendant is excluded from recovery under the policy in question. Therefore, the plaintiff shall have the right to open and close."

We read this statement to place the burden of proof on the insurer for purposes of proving an exclusion applied. Nowhere does it place the burden on the insurer in proving the risk was covered except as inferred from the placement of the right to open and close. Since plaintiff did not challenge this below, we reject any complaint now.

Judgment affirmed with directions to allow interest only from August 24, 1967.

HOWARD, C. J., and HATHAWAY, J., concur.