CARL WEISSMAN & SONS, INC., Plaintiff and Respondent, *v.* ST. PAUL FIRE & MARINE INSURANCE COMPANY, a corporation, Defendant and Appellant.

No. 11489.

Submitted September 24, 1968. Decided December 19, 1968.

448 P.2d 740.

Church, Harris, Johnson and Williams, Cresap S. McCracken (argued), J. Dwaine Roybal (argued), Great Falls, for appellant.

Jardine, Stephenson, Blewett & Weaver, Jack L. Lewis (argued), Alex Blewett, Jr. (appeared), Great Falls, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON, delivered the Opinion of the Court.

This appeal stems from an action brought in the eighth judicial district, Cascade County, by Carl Weissman & Sons, Inc. against the appellant, St. Paul Fire & Marine Insurance Company, as surety for Great Falls Plumbing, Heating & Sheet Metal Co., Inc. The lower court granted summary judgment in favor of Weissman for stipulated damages which summary judgment was based upon an underlying summary judgment determining liability.

On July 3, 1964, the Roman Catholic Bishop of Great Falls, Montana, let a construction contract to Sletten Construction Company for an addition to Central Catholic High School of Great Falls. By that agreement, Sletten, among other things, agreed to do everything required thereby and by the General Conditions of the contract. The General Conditions provided that the contractor would provide and pay for materials and labor necessary for the execution and completion of the work; furnish bond, in a form prescribed by the owner, covering faithful performance of the contract and the payment of all obligations arising thereunder; and, bind every subcontractor to the terms of the General Conditions. The latter provision also contained a proviso that the subcontractors were bound by the General Conditions and assumed toward the contractor

all of the obligations and responsibilities the contractor assumer toward the owner.

On July 13, 1964, Sletten entered into a subcontract with Great Falls Plumbing by which the latter was to perform certain work on the project. Great Falls Plumbing agreed to be bound to Sletten by the terms of the General Conditions and to assume towards Sletten the obligations Sletten assumed towards the Bishop; agreed to pay for all materials, skilled labor and instrumentalities used in or in connection with the performance of the subcontract when and if bills or claims became due; and, agreed to furnish a surety bond conditioned upon and covering faithful performance of all the terms, provisions and conditions of the subcontract.

On July 16, 1964, St. Paul executed its bond; portions of that bond named Sletten as obligee to whom Great Falls Plumbing, as Principal, and St. Paul, as Surety, bound themselves. Pertinent portions of the bond provided as follows:

"Now, Therefore, The Condition of This Obligation Is Such, that, if the said Principal shall faithfully perform the work contracted to be performed under the Subcontract and shall pay, or cause to be paid in full, the claims of all persons performing labor upon or furnishing materials, appliances, teams or power contributing directly to the performance of the Subcontract, then this obligation shall be void; otherwise to remain in full force and effect."

The above obligation was subject to the following conditions:

"First: That, in the event of any default on the part of the Principal, written notice shall be given to the Surety, as promptly as possible, and in any event within ten (10) days after such default shall have become known to the Obligee or to any representative of the Obligee authorized to supervise the performance of the Subcontract. * * *

"Third: That no right of action shall accrue hereunder to or for the use or benefit of any one other than the Obligee as

named herein, and the rights and interests of the Obligee hereunder may not be assigned or transferred without the prior written consent of the Surety.''

Weissman, in December 1964, commenced furnishing various items of merchandise to Great Falls Plumbing and continued to do so on an open account until August 12, 1965. Invoices were sent by Weissman after each sale to Great Falls Plumbing as well as monthly statements.

On June 28, 1965, during the course of a conversation between personnel of St. Paul and the Grinnell Company of the Pacific, another supplier of Great Falls Plumbing, St. Paul became aware of a possible claim by Grinnell. On July 23, 1965, a third supplier, American Air Filter Company, gave written notice and St. Paul become aware that Great Falls Plumbing was not making payment on its obligations to its creditors on the project.

Then on September 7, 1965, St. Paul became active in the matter and during the course of a personal inspection and review on that date of Great Falls Plumbing's records, received notice of the unpaid bills of a number of suppliers to Great Falls Plumbing. On September 13, 1965, St. Paul directed a letter to Sletten advising Sletten of Great Falls Plumbing's financial difficulties and directed Sletten to make all further payments to St. Paul. Then, on or about September 15, 1965, St. Paul became aware of a defective mechanic's lien filed by Weissman.

Thereafter, during 1966, St. Paul paid the claims of five suppliers of Great Falls Plumbing and also received from Sletten $11,500 earned by Great Falls Plumbing on the subcontract. However, St. Paul refused to pay the claim of Weissman which caused Weissman on July 13, 1966, to file this suit. It is also well to note that St. Paul paid to Sletten $1,073.83 on a claim Sletten had against Great Falls Plumbing.

After Weissman filed this suit, St. Paul moved for summary judgment. Then on December 10, 1967, Weissman moved

for summary judgment against St. Paul as to liability. On March 11, 1968, the district court denied St. Paul's motion for summary judgment and granted Weissman's motion for summary judgment as to liability. On March 27, 1968, St. Paul and Weissman entered into a stipulation which provided that if St. Paul were liable then the proper amount of that liability was $2,435. In that same stipulation St. Paul reserved all issues as to liability. With the filing of the stipulation, Weissman moved for summary judgment as to damages and the district court thereafter granted judgment in favor of Weissman and against St. Paul for the stipulated amount. This appeal followed.

The question presented to this Court is whether under the facts of the case St. Paul, as surety for Great Falls Plumbing, is obligated under its bond to pay Weissman, an unpaid creditor of Great Falls Plumbing? The question really comes down to whether condition "Third" of the bond, as set forth above, absolves St. Paul of any liability of its principal (Great Falls Plumbing) to Weissman and whether St. Paul is exonerated of liability because notice of Great Falls Plumbing's default may not have been given in the exact manner specified in the bond in condition "First"?

In Montana we have a long series of cases that hold contract documents and bonds must be construed together. In a very old case, Watson v. O'Neill, 14 Mont. 197, 201, 35 P. 1064 (1894), this Court, when asked to reform a surety bond given in connection with the contract to construct the Watson. Block in Helena, Montana, said:

"It is evident from the record that the plans and specifications of the building, the contract for the erection and completion thereof, and the bond sued on are all contemporaneous,. and part of the same transaction,—in fact, parts of the same· transaction,—in fact, parts of the res gestae—and, as such,. should be construed together, in order to explain each other,.

and determine the rights, obligations, and liabilities of the parties thereto.''

Also our code in section 13-708, R.C.M. 1947, provides:

''Several contracts—when taken together. Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.''

See also Federal Surety Co. v. Basin Const. Co., 91 Mont. 114, 5 P.2d 775 (1931); Great Western Oil Co. v. Lewistown Oil & Refining Co., 91 Mont. 146, 6 P.2d 863 (1931); and Gary Hay & Grain Co., Inc. v. Carlson, 79 Mont. 111, 255 P. 722 (1927).

St. Paul would have us rely on the bond as the sole controlling instrument.

'' * * * In substance the insurer contends that the liability of the defendant company must be determined from the language of the policy without consideration of the agreement and bond pursuant to which the policy was written and premium paid therefor.'' Doheny v. United States Fidelity & Guaranty Co., D.C., 34 F.Supp. 888, 890 (1940).

However, we think that the two contracts and the two bonds should be considered contemporaneous and as ''parts of substantially one transaction'' and should all be considered together. Both contracts were signed and both bonds were given within a two week period; in addition both bonds were written by the same firm, the Cogswell Agency of Great Falls. Under those circumstances we do not feel we should look to the St. Paul bond as the controlling instrument.

In Article 9 of the prime contract, Sletten agreed to pay for all materials; in Article 30 Sletten agreed that the Bishop would have the right to require a bond covering payment of all obligations. Then in Article 37 Sletten agrees to bind ''* * * every Subcontractor and every Subcontractor agrees to be bound by the terms of the Agreement, the General Conditions of the Contract, the Supplementary General Conditions,

the Drawings and Specifications * * *''. Also Article 37(a) provided that subcontractors would have to agree to assume toward the contractor all the obligations and responsibilities that the contractor assumed toward the owner.

In the subcontract Great Falls Plumbing agreed "To pay for all materials, skill, labor and instrumentalities used in, or in connection with, the performance of this Contract, when and as bills or claims therefor become due, and to save and protect the premises, the Owner, and the Contractor from all claims and mechanics' liens on account thereof * * *''. Great Falls Plumbing also agreed to be bound to the contractor by the terms of the general conditions and "To obtain * * * an acceptable surety bond in amount equal to the Contract price conditioned upon and covering the faithful performance of, and compliance with, all the terms, provisions, and conditions of this Contract * * *''.

So it is clear: that Sletten agreed to pay for all materials it used; that Sletten agreed to bind every subcontractor to pay for all materials the subcontractor used; that Great Falls Plumbing agreed to pay for all materials it used; that Great Falls Plumbing agreed to procure a surety bond covering its faithful performance (which included payment for all materials); that Great Falls Plumbing procured such a bond; and that St. Paul furnished the bond for Great Falls Plumbing.

The obligation of St. Paul was that if Great Falls Plumbing caused to be paid in full the claims of all persons performing labor upon or furnishing materials contributing directly to the performance of the subcontract, then the obligation would lapse and be void. However, if the claims were not paid, then the obligation would remain in full force and effect. As events transpired, the claims of Weissman and a number of other suppliers were not paid.

In the face of all the agreements to see that suppliers of materials be paid, which knowledge of (72 C.J.S. Principal &

Surety §91, p. 569-572), and in the face of St. Paul's agreement providing that if claims were not paid then its obligation would remain in force and effect, St Paul now asks this Court to enforce condition "Third" of its bond and foreclose Weissman's claim even after St. Paul has admitted liability by paying the claims of other suppliers of Great Falls Plumbing. This we will not do.

██ The whole intent of all the agreements was that suppliers of either Sletten or Great Falls Plumbing would be paid, and bonds were furnished to insure that they were paid. We will not now hold that condition "Third" limiting rights of action on St. Paul's bond to the obligee, Sletten, controls all other intents and agreements of the parties. That is, we will not hold that form (the insertion of condition "Third") should control over substance (the agreement that suppliers shall be paid).

Justice Haney of the Ninth Circuit Court of Appeals concurring when that court affirmed the United States Fidelity & Guaranty Co. v. Doheny case in 9 Cir., 123 F.2d 746, 749 (1941) said

"*First*. In determining the liability of the surety the contract and bond are to be construed together. Federal Surety Co. v. Basin Const. Co., 91 Mont. 114, 126, 5 P.2d 775. By becoming surety, appellant assumed obligations which were 'coextensive with and measured by the promises of the principal to the obligee contained in the contract.' Id. Therefore appellant as surety promised to supply the insurance mentioned in the contract."

The insurance mentioned in the instant contract was insurance that promised that suppliers would be paid.

██ The only other question to be answered is whether there was non-compliance with condition "First" which non-compliance would exonerate St. Paul of liability. We think not. As stated above condition "First" required notice of any default "as promptly as possible, and in any event within ten (10) days after such default shall have become known to

the Obligee or to any representative of the Obligee authorized to supervise the performance of the Subcontract.''

The notice requirement requires written notice to be given within ten days after default became known to Sletten or its representative. This is an impossible condition, for unless Sletten advises Weissman, Weissman is not in a position to know when Sletten or its representative becomes aware of the default by Great Falls Plumbing.

Also from reading condition ''First'' it would appear that St. Paul meant for the Obligee to give notice. If that is the case we will not hold Weissman for an omission on the part of Sletten, that is Sletten's failure to give notice of default.

Respondent Weissman in its brief also alleges (which allegation is uncontradicted) that three other suppliers of Great Falls Plumbing failed to give notice to St. Paul for periods ranging from 17 to 36 days after St. Paul acquired by other means notice of their claims. Yet St. Paul paid their claims. We ask ourselves why St. Paul did so in light of condition ''First''. The only answer we can find is that St. Paul did not consider time of the essence, and if time were not of the essence with regard to other suppliers, then it should not be of the essence with regard to Weissman.

This entire case has been baffling to this Court. St. Paul was confronted with six suppliers of Great Falls Plumbing, at least three of which failed to give notice within the time specified in condition ''First''. Yet St. Paul paid their claims and then attempted to deny liability so far as Weissman was concerned; and tried to deny liability without distinguishing Weissman's claim from the other five. In that situation we cannot in good conscience, and especially in light of the law of this state, deny Weissman's claim. Therefore, the judgment of the district court is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN C. HARRISON concur.