465 F.2d 22
 CORNELL, HOWLAND, HAYES & MERRYFIELD, INC., a corporation,
Plaintiff-Appellee,
v.
CONTINENTAL CASUALTY COMPANY, also known as Continental
National American Group, and American Motorists Insurance
Company, Illinois corporations, Defendants, American
Motorists Insurance Company, Appellant.
CORNELL, HOWLAND, HAYES & MERRYFIELD, INC., a corporation, Appellant,
v.
CONTINENTAL CASUALTY COMPANY, also known as Continental
National American Group, and American Motorists
Insurance Company, Illinois
corporations, Appellees.
 Nos. 26178, 26186.
 United States Court of Appeals,
 Ninth Circuit.
 July 3, 1972.
 
 Stewart M. Whipple (argued), of Seitz, Whipple, Bemis & Breathouwer, Portland, Or., for American Motorists Insurance Co.
 Paul N. Daigle (argued), Ken E. Roberts, Portland, Or., for Continental Casualty Co.
 John Gordon Gearin (argued), David C. Landis, Portland, Or., John B. Fenner, Corvallis, Or., for Cornell, Howland, Hayes & Merryfield, Inc.
 Before: HAMLIN, HUFSTEDLER, and GOODWIN, Circuit Judges.
 ALFRED T. GOODWIN, Judge:
 
 
 1
 Cornell, Howland, Hayes & Merryfield, Inc., a firm of consulting engineers known as CH2M, brought declaratory judgment proceedings against two insurance companies to establish that at least one insurer would furnish coverage for claims arising out of alleged negligence in the preparation of plans and specifications for a city sewer project.
 
 
 2
 The district court held that American Motorists Insurance Company was liable, and that Continental Casualty Company was not liable. American appeals, and CH2M cross-appeals (as a hedge), from that part of the judgment exonerating Continental.
 
 
 3
 On August 15, 1959, CH2M purchased a professional-liability policy from Continental. The policy insured CH2M for losses resulting from CH2M's negligent acts or omissions occurring during the period of coverage, provided that claims against the insured were made within the period.
 
 
 4
 In 1961, the City of Salem, Oregon, retained CH2M to prepare plans and specifications for an outfall sewer project. CH2M completed the plans in 1963, and the city in due course awarded the contract to the M & S Construction Company (M & S).
 
 
 5
 In December of 1964, after the project's completion, M & S advised CH2M by letter that the City of Salem had failed to supply M & S with certain information, the absence of which caused M & S a substantial financial loss. M & S, therefore, made a claim for damages against the City of Salem. At that time, no claim had been made against CH2M.
 
 
 6
 In August of 1965, an agent of American solicited CH2M in what proved to be a successful effort to cause CH2M to change insurance carriers. American's agent orally advised CH2M's counsel that, after the change, should either M & S or the City of Salem make a claim against CH2M, CH2M would be covered.
 
 
 7
 On August 13, 1965, CH2M's counsel, in conjunction with American's agent, wrote a letter to Continental advising Continental of CH2M's plan to change insurers. This letter also advised Continental of the potential M & S claim. On August 15, 1965, American issued its policy to CH2M, and Continental terminated its coverage.
 
 
 8
 The American policy provided that coverage would be extended for CH2M's acts, errors, or omissions occurring prior to the policy's effective date only if: (1) the insured did not know of such acts, errors, or omissions, and (2) no other insurance was applicable to such negligent conduct.
 
 
 9
 In September, 1966, M & S commenced an action in Oregon's state courts against CH2M seeking damages totaling $481,741.01. Continental declined to defend CH2M, on the ground that no claim had been made against CH2M within the period of Continental's coverage. American also refused to defend, contending that prior to the effective date of its policy CH2M had knowledge of the acts or omissions upon which the M & S claim was based.
 
 
 10
 The district court dismissed CH2M's action against Continental, after finding that the M & S claim against CH2M had not been made within the period of Continental's coverage. The court also found that, prior to the effective date of American's policy, CH2M had knowledge of the facts surrounding the sewer project. These two findings, standing alone, would leave CH2M with no insurance at all for the M & S claim.
 
 
 11
 The district court also found, however, that, insofar as the M & S claim was concerned, American either had waived or was estopped from relying upon the policy provision limiting coverage to acts of negligence about which the insured had no knowledge at the time the policy was written. The court, therefore, determined that American was obligated to defend CH2M against the M & S action, and awarded CH2M judgment for the costs it had incurred during the M & S litigation and attorneys' fees in the present action against Continental and American.
 
 
 12
 Waiver is the voluntary relinquishment of a known right. Fred Meyer, Inc. v. Central Mutual Insurance Co., 235 F.Supp. 540 (D.Or.1964). In order to waive an insurance policy provision, the insurer must have knowledge of that provision, and must intend that it not apply. Fred Meyer, Inc. v. Central Mutual Insurance Co., supra; Grau v. Northwestern Mutual Insurance Co., 221 Or. 240, 350 P.2d 1082 (1960).
 
 
 13
 American urges that the district court's finding that American intended to relinquish its liability-limiting provision was clearly erroneous. We find no reversible error.
 
 
 14
 The evidence revealed that, prior to the issuance of American's policy, American's agent was fully aware of the M & S claim against the City of Salem. American's agent helped CH2M's counsel draft the letter to Continental which referred to the M & S claim as a "potential claim" against CH2M.
 
 
 15
 There was testimony, which the district court believed, indicating that, in the face of such knowledge, American's agent assured CH2M's counsel that CH2M would be covered in the event of an actual claim against it by M & S. While the agent did not specify which carrier would cover such a claim, the court could believe that the agent intended CH2M to rely upon an implied assurance that American would provide coverage.
 
 
 16
 The fact-finder was entitled to infer that American had intended to cover CH2M's contingent liability in order to get the CH2M business. American may not have considered the risk to be significant, or it may have believed that Continental's policy would cover any future claim by M & S against CH2M, and that American could escape under its "other-insurance" clause. The fact-finder was not clearly in error in finding waiver.
 
 
 17
 Alternatively, if American had not in fact waived its liability-limiting clause, the evidence amply supports a holding that American, by its agent's assurances of coverage in return for CH2M's patronage, was estopped from asserting the limiting clause of its contract. American's agent was aware of the potential M & S claim, and made representations to CH2M which, if not intended as a waiver, were false and deceptive, and thereby induced CH2M to transfer its insurance coverage. See Donahoe v. Eugene Planing Mill, 252 Or. 543, 450 P.2d 762 (1969); Great American Ins. Co. v. General Ins. Co. of America, Or., 475 P.2d 415, 420 (1970).
 
 
 18
 American also argues that, because M & S had made a claim against the city during the period of Continental's coverage and CH2M knew of the claim Continental remained liable and American should have been relieved of liability. The district court held, however, that no claim had been made by M & S against CH2M prior to August 15, 1965. Since this holding finds support in the evidence, we are not at liberty to disturb it.
 
 
 19
 The sole claim made by M & S prior to the expiration of Continental's coverage was against the City of Salem. While M & S had notified CH2M of its claim against the city, that notice did not suggest that M & S was making a demand, or was planning to make a demand, upon CH2M. Nor did CH2M, in its August 13, 1965, letter to Continental, refer to the M & S claim as one against CH2M.
 
 
 20
 Since no rights were asserted by M & S against CH2M until September 1966, after the close of the period of Continental's coverage, the district court did not err in dismissing the CH2M claim against Continental. See, e. g., Rotwein v. General Accident Group, 103 N.J.Super. 406, 247 A.2d 370 (1968).
 
 
 21
 American also contends that the district court erred by awarding CH2M the reasonable attorneys' fees incurred during the prosecution of the instant action. American urges that the CH2M action against both American and Continental was, in essence, one for a declaratory judgment, and that, as a result, ORS 743.114 does not permit the award of attorneys' fees.
 
 
 22
 ORS 743.114(1) empowers the court to grant attorneys' fees where settlement is not made within six months of the date proof of loss is filed with the insurer and an action is then brought in an Oregon court upon the insurance policy.
 
 
 23
 A declaratory judgment action is not, under Oregon law, an action on an insurance policy. First National Bank v. Malady, 242 Or. 353, 408 P.2d 724 (1965). However, where the insured seeks both declaratory relief and a money judgment under a policy of insurance, and the insured recovers a money judgment, attorneys' fees are allowed. Williams v. Stockman's Life Ins., 250 Or. 160, 441 P.2d 608 (1968); Hardware Mutual Cas. Co. v. Farmers Ins. Exchange, 256 Or. 599, 474 P.2d 316 (1970).
 
 
 24
 Here, CH2M sought both a declaratory judgment and recovery of the expenses incurred during the defense of M & S's claim. The district court awarded CH2M a money judgment. The allowance of attorneys' fees to CH2M was, therefore, permissible under ORS 743.114(1).
 
 
 25
 Affirmed.