J. G. LINK & COMPANY, a Co-Partnership of J. G. Link and Elmer F. Link, Plaintiffs-Appellants,

v.

CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant-Appellee.

WAYRYNEN FUNERAL HOME, INC., a Montana corporation, et al., Plaintiffs-Appellants,

v.

CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant-Appellee.

No. 26220.

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1972.

Rehearing Denied March 12, 1973.

James A. Poore (argued), of Poore, McKenzie & Roth, Butte, Mont., John C. Sheey (argued), Billings, Mont., Neil J. Lynch, of Genzberger, Genzberger & Lynch, Butte, Mont., for plaintiffs-appellants.

Jack L. Lewis (argued), of Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendant-appellee.

Before HAMLEY and HUFSTEDLER, Circuit Judges, and MUECKE, District Judge.*

MUECKE, District Judge:

This case deals with an architect's error and omission insurance policy. The action had its inception when Wayrynen Funeral Home, Inc., a Montana corporation, together with Mr. and Mrs. Ray Wayrynen (hereinafter called the Wayrynens) initiated an action in the state court against the architectural partnership of J. G. Link & Company (hereinafter called the Links), and other parties not involved here. The state action involved a suit for damages filed by the Wayrynens arising out of a claim against the Links for negligent design and construction of a funeral home built for the Wayrynens.

In the state action, the Links filed a third party complaint against Continental Casualty Company, an Illinois corporation (hereinafter called Continental), as the insurer of the Links under an architect's error and omission policy. Continental removed the entire action to the United States District Court for the District of Montana. The District Court remanded the original action by the Wayrynens against the Links, but it retained jurisdiction over the third party complaint. A motion by the Wayrynens to intervene as third party plaintiffs in the District Court was denied.

Thereafter, the Wayrynens obtained a judgment in state court, in part against the Links, and after appeal to the state supreme court on the issue of damages, the state court judgment became final. While the state court appeal was pending, the Wayrynens initiated a second suit against Continental in the District Court seeking payment from Continental

---

* Honorable C. A. Muecke, United States District Judge, District of Arizona, sitting by designation.

in the amount of its state court judgment. Upon motion by the plaintiffs, the Links and the Wayrynens, the two causes were ordered consolidated for trial. Judgment was entered in favor of Continental and against both plaintiffs, who filed this appeal.

The essential District Court findings of fact and conclusions of law follow. Prior to November 11, 1965, the Links arranged through a broker to obtain an architect's error and omission insurance policy to comply with a Montana statutory requirement for architects performing architectural duties on state projects. The policy period was from November 11, 1965 to November 11, 1966. Coverage under the policy was for legal liability "caused by error, omission, or negligent act" of the insured. Insurance was afforded only "if claim . . . is first made against the insured during this policy period." A condition of the policy was that the insured "as soon as practicable after receiving information as to his alleged errors, omissions or negligent acts, give written notice thereof to the Company . . ." Another clause required cooperation of the insured in the conduct of any suits. The only other pertinent provision required compliance by the insured with the terms of the policy for any action to lie against the insurance company.

During October 1965, J. G. Link of J. G. Link & Company entered an oral contract with the Wayrynens whereby the Links were to plan and supervise construction of a funeral home. Construction was begun by a contractor named Luety. While the building was under construction and sometime before October 5, 1966, Mrs. Wayrynen advised J. G. Link of squeaks that had developed in the second floor. The squeaks were called to the attention of the contractors, but all the steps taken to remedy the squeaks were to no avail. Sometime in May 1967, J. G. Link attended a meeting at the Wayrynen funeral home where the squeaking floor was discussed.

Thereafter, in June 1967, the Wayrynens initiated their action in state court.

After service of summons and complaint on the Links, by letter dated June 23, 1967, which was received by Continental on June 29, 1967, the Links notified Continental of the impending suit. Continental referred the matter to a local adjuster for investigation sometime prior to July 18, 1967. After several attempts by the adjuster to contact Link to discuss insurance coverage, a letter of September 25, 1967 from Continental to the Links disclaimed coverage. Another letter to the Links' attorney dated September 28, 1967 left the matter of coverage open due to a lack of information. Finally, a meeting was held on October 6, 1967, at which time J. G. Link told the adjuster that his first knowledge of the squeaking floors came when he received notice of the May 1967 meeting at the Wayrynen's funeral home.

It should be noted that by letter dated September 18, 1967, before Continental disclaimed coverage as to the Links, the Wayrynens offered to provide Continental with the information necessary so that no forfeiture of insurance would occur. This first letter was followed by a second on September 26, 1967 which notified Continental of the dates of depositions to be taken of certain parties to the state court action.

By reason of the disclaimer of coverage by Continental, the Links defended the state court action through their own attorney. Judgment against the Links was essentially for negligent design and for negligently failing to supervise and inspect the construction of the funeral home.

In the action in the United States District Court against Continental by the Wayrynens and the Links, the Court concluded that coverage did not extend to the Links since the Links failed to give notice to Continental as soon as practicable after receiving information as to their errors, omissions, or negligent acts. This, it was found, was in derogation of provisions in the insur-

ance policy. Even though Continental had defended against coverage primarily on the basis that coverage was not afforded in that "no claim" had been made during the period of the policy, the Court concluded that Continental was not estopped from also asserting that notice of the claim was untimely. The court found that Continental was not estopped because when Continental denied coverage on the basis that no claim had been made during the period of the policy, it was entitled to rely on Link's representation of October 6, 1967 that the first he knew of any squeaking was in May 1967. The District Court further found there was no waiver by Continental in asserting the notice provision since, it was concluded, Continental was misled by the Links into disclaiming on other grounds. Having misled Continental, the District Court determined that the Links were estopped from asserting that a claim for error had been made during the policy period which would have entitled them to coverage. Finally, the District Court concluded that the rights of the Wayrynens were coextensive with the rights of the Links, hence the Wayrynens were denied any coverage due to the estoppel of the Links.

Of the many contentions of both parties, we deal primarily with two issues. Does the "if claim" clause of the instant insurance policy, which requires that claim be made against the insured during the policy period, violate the public policy of Montana as asserted by appellants? And, are the rights of the injured Wayrynens under the instant policy coextensive with the rights of the insured party, the Links as determined by the District Court?

## DOES THE "IF CLAIM" CLAUSE OF THE INSURANCE POLICY VIOLATE MONTANA PUBLIC POLICY?

Appellants contend, in essence, that the insurance policy in question here is an "occurrence" policy which is void under R.C.M. § 13–806 insofar as it limits the time within which the insured may enforce his rights. R.C.M. § 13–806 provides:

> *Restraints upon legal proceedings.* Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void.

Appellants argue further that the policy is void under Montana case law insofar as this insurance contract creates a condition impossible of fulfillment. Carl Weissman & Sons, Inc. v. St. Paul Fire & Marine Insurance Co., 152 Mont. 291, 448 P.2d 740 (1968). Appellee contends that the policy in issue is not void as against public policy since it merely creates a condition precedent to enforcement of a right. Being a condition precedent, it is argued that a claim must be made within the policy period before any right exists which might be affected by R.C.M. § 13–806. In essence, appellee seems to be saying that the policy in question is valid as a "discovery" policy.

■■ It is, of course, a fundamental principle of insurance law that ambiguous insurance contracts will be construed against the insurer. National Farmers Union Property & Casualty Co. v. Colbrese, 368 F.2d 405 (9th Cir. 1966) cert. denied 386 U.S. 991, 87 S.Ct. 1306, 18 L.Ed.2d 336 (1967); Keating v. Universal Underwriters, 133 Mont. 89, 320 P.2d 351 (1958); Cacic v. Slovenska Narodna Podporna Jednota, 102 Mont. 438, 59 P.2d 910 (1936). In the instant case, the insurance contract is ambiguous in that it is not clear whether the policy is a "discovery" or an "occurrence" policy, and it is likewise unclear whether information given the insured in October 1966 constituted a claim within the terms of the policy. An insurance company will not be permitted to deny liability under a policy that is so vague that no matter what the circumstances, the company may deny that coverage exists.

This case presents such a situation. If the insurance policy is considered a "discovery" policy, that is one in which the policy is effective only if the act or omission is discovered during the policy period no matter when the act or omission occurred, Samuel N. Zarpas, Inc. v. Morrow, 215 F.Supp. 887, 888 (D.N.J. 1963), then for coverage of the Links to exist a claim would have to have been made between November 11, 1965 and November 11, 1966. While it can be inferred from the opinion of the District Court that the complaints about the squeaky floor made by the Wayrynens to the Links in October 1966 constituted a claim within the policy period, Continental has continually asserted that no claim was made within the policy period.

■ If the policy is considered an "occurrence" policy, that is one in which the act or omission must occur during the policy period for there to be coverage, Samuel N. Zarpas, Inc. v. Morrow, *supra*, then had the act or omission occurred during the policy period, it certainly would have been a violation of Montana policy (as set forth in R.C.M. § 13–806) to limit the time within which a party may enforce his rights. See Thielbar Realities, Inc. v. National Union Fire Insurance Co., 91 Mont. 525, 9 P.2d 469 (1932). Therefore, if the policy is considered to be an "occurrence" policy, the District Court finding that Link misled Continental into denying coverage would have no effect on policy coverage. The "if claim" clause as interpreted by Continental would in effect have required the filing of a complaint on or before November 11, 1966, the date the policy ended, in order for the Links to be covered. Such a requirement, we repeat, would be void as against public policy. Thielbar Realities, Inc. v. National Union Fire Insurance Co., *supra*. Thus, Link should have been entitled to coverage even if a complaint against the insured was not filed until June, 1967. The insurer, Continental, would not have been entitled to disclaim coverage even though Link misled the insurer into believing that the first information about a claim was received in May 1967 since assertion of coverage under R.C.M. § 13–806 could have been made at least through June 1967. Presuming the act or omission to have occurred during the policy period, the insurer would not be permitted under Montana statute to limit the time within which the insured could assert a claim against the insurer.

If the policy is considered to be a "discovery" policy, the nature of the information required to secure coverage is far from clear. Appellee Continental suggests that the information required to constitute a "claim" for errors or omissions reaches the level of a demand for something on the ground of a right. Appellants Link and Wayrynen contend that the Wayrynen's complaints to Link during October 1966 about squeaky floors was sufficient information to entitle Link to coverage under the policy. This is asserted even though a determination that the squeaks were due to the Links' negligence was not made until after the policy period had ended. The logic of the appellee is not compelling. On the one hand, appellee argues that making a claim is a condition precedent to the right of coverage, and then on the other hand, they say the right of coverage must exist before claim can be made. It being far from clear what constitutes information of a claim under the policy, the misleading nature of Link's statement to Continental that the first he knew of complaints regarding the squeaky floor can be attributed directly to the ambiguous nature of the Continental policy.

A close examination of the contentions of each of the parties in this case suggests that even the appellee-insurer was uncertain whether its policy was of the nature of a "discovery" policy or of an "occurrence" policy. The insurer will not be permitted under these circumstances to claim the legal benefits of one type policy while denying the detrimental consequences of the same type policy. Specifically, Continental cannot claim that the policy requires occurrence of an

act or omission within the policy period for there to be coverage, and then deny that the policy is an "occurrence" policy to which R.C.M. § 13–806 is inapplicable. Likewise, Continental cannot claim that the policy requires discovery of an error or omission within the policy period and then deny that coverage exists even though information given during the policy period ultimately leads to a determination of liability against its insured.

We note, in conclusion, that we need not decide whether this is an "occurrence" or a "discovery" policy. If it is an "occurrence" policy, the insured would be entitled to coverage since suit was filed within the requirements of R. C.M. § 13–806. If it is a "discovery" policy, the insured would be entitled to coverage since the ambiguity of the "if claim" provision is to be construed against the insurer.

ARE THE RIGHTS OF THE INJURED PARTY, THE WAYRYNENS, COEXTENSIVE WITH THE RIGHTS OF THE INSURED PARTY, THE LINKS?

Even if it were assumed to be correct that the Links were estopped to assert that coverage existed under this policy because J. G. Link had misled Continental into believing that no claim was made during the policy period under the circumstances of this case, such a determination should in no way be binding on the Wayrynens.

■ Appellants properly contend, in our opinion, that, under Montana law, the misrepresentation of the insured under an insurance policy does not affect the rights under the policy of an injured party. McLane v. Farmers Insurance Exchange, 150 Mont. 116, 432 P.2d 98 (1967). Thus, we agree with appellants' assertion that even though J. G. Link may have misled Continental into denying coverage under the instant policy, the Wayrynens may nevertheless recover from Continental for Links' negligence. We, therefore, do not agree with appellees' argument that under the policy, the Wayrynens have no rights greater than the Links, Fireman's Fund Indemnity Co. v. Kennedy, 97 F.2d 882 (9th Cir. 1938), nor do we agree with appellees' view that since the Wayrynens and Links in their motion to consolidate took the position that their rights were coextensive, they cannot now claim rights that are separate and distinct.

■■ First, the law is clear that an act of consolidation does not affect any of the substantive rights of the parties. 5 J. Moore's Federal Practice § 42.02 (2d ed. 1971). Here, the Wayrynens initiated a separate suit and put on separate proof after consolidation. Thus, we are convinced, despite the recitals in the memorandum in support of the motion to consolidate, that if the appellants otherwise have separate and distinct rights, these rights have been preserved.

■ We are convinced, secondly, that under the policy provisions here presented, the Wayrynens had vested rights under the policy and were therefore entitled to assert coverage despite any estoppel of the Links.

There is no question that the general rule is that the rights of an injured party to proceed against the insurer is dependent upon the terms of the insurance contract and that the injured acquires no greater rights under a policy than those existing in favor of the insured. Firemen's Fund Indemnity Co. v. Kennedy, *supra*. While some cases seem to have given an injured party greater rights than those possessed by an insured, 8 J. Appleman, Insurance Law & Practice § 4811 (1962), in this case the Wayrynens had rights vested under the terms of the policy which entitled them to coverage even though the Links were estopped to assert coverage.

The Links' policy with Continental included the condition that:

No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by

judgment against the insured after actual trial, arbitration or by written agreement of the insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the insured to determine the insured's liability.

██ A similar provision in an automobile liability policy has been held to entitle the injured party, who complied with all the conditions of the policy despite the insured's failure to do so, to maintain a proceeding under the policy. Northwestern Mutual Insurance Co. v. Independence Mutual Insurance Co., Mo.App., 319 S.W.2d 898, 903 (1959). See also American Indemnity Co. v. Martin, Tex.Civ.App., 54 S.W.2d 542 (1932). Under McLane v. Farmers Insurance Exchange, *supra,* the Supreme Court of Montana has found that where the rights of an injured party vested prior to an attempted rescission of an automobile liability policy based on a misrepresentation by the insured, the injured party was entitled to coverage despite a default judgment having been entered against the insured. It is clear in the instant case that, since by the terms of the insurance contract an action could be maintained by a party obtaining a judgment against the insured if the insured "fully complied with all the terms of the policy," the Wayrynens have the right to attempt to prove that the Links were entitled to coverage. Indeed, the appellee specifically agrees with this proposition.*

The conditions of the policy which may have been broken by the Links were the cooperation clause and the notice provision. Since it was ordered by the District Court that the reference to

Links' breach of the cooperation be deleted from the original findings of fact and conclusions of law, it is taken that this has been considered and that there is no issue concerning a breach of that clause. Also, the conclusion of the District Court that the Links breached the notice provision of the policy in that they did not give notice as soon as practicable after receiving information as to their errors is clearly erroneous.

██ The basis of the District Court's conclusion on notice is unclear. It appears to be based on a period either from October 1966, when Link was first told of the squeaking floor, to June 1967, when the Links gave the first written notice to Continental after having been served with a complaint based on the state court action, or from May 1967 when Link attended the meeting about the squeaking floors, to June 1967. If the period of concern is October 1966 to June 1967, the conclusion is erroneous since information received which is trivial in nature should not be used as the basis for requiring notice. See generally 8 J. Appleman, Insurance Law & Practice §§ 4742–4744 (1962); 2 R. Long, Law of Liability Insurance § 13.11 (1972). If the period of concern is May 1967 to June 1967, we hold that under the circumstances of this case the delay in giving notice is not unreasonable. No prejudice was shown against Continental based on this delay in notice. Continental had ample time to prepare a defense and it had ample notice of suit, having been informed of the complaint within days after service upon its insured. In addition to the foregoing, the Wayrynens stood ready and willing to assist Continental in obtaining information relevant to the suit long before Continental made its final disclaimer. Thus, under the unique circumstances of this case, we hold that the rights of the injured party are not coextensive with the rights of the insured insofar as the injured has been denied

* See Brief of Appellee at 29.

the right to assert that coverage be extended to him.

We find it unnecessary to consider the other contentions presented by the parties.

For the aforementioned reasons, the District Court is reversed and judgment in favor of both plaintiffs should be entered.