Forrest T. HOYT, Plaintiff-Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, Defendant-Appellee.

No. 77–2252.

United States Court of Appeals, Ninth Circuit.

Nov. 5, 1979.

Robert G. Beshears, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for plaintiff-appellant.

K. C. Weyl, Burch, Cracchiolo, Levie, Guyer & Weyl, Phoenix, Ariz., for defendant-appellee.

Before MERRILL and TRASK, Circuit Judges, and EAST,* District Judge.

MERRILL, Circuit Judge:

Appellant Hoyt appeals the district court's grant of summary judgment and dismissal of his action for declaratory judgment against appellee, his professional liability insurance carrier. Hoyt, a lawyer, sought coverage benefits in regard to a malpractice action pending against him in state court.

On April 27, 1973, appellee issued a one-year "Lawyer's Professional Liability Policy" for Hoyt's firm. Paragraph "G" contained the following clause:

"This policy applies within the United States of America, its territories or possessions or Canada to professional services performed for others (a) during the policy period *(b) prior to the effective date of the Policy if claim is made or suit is brought during the policy period* and providing the Insured, at the effective date of the Policy, had no knowledge or could not have reasonably foreseen any circumstance which might result in a claim or suit." (emphasis added).

The renewal policy, effective on April 27, 1974, did not contain the "if claim is made" provision of the expired policy.

The events leading up to the malpractice claim arose out of a will drawn by Hoyt for Constance Cope in 1962, in which Cope exercised a general power of appointment given to her by her mother's will. Cope died on November 29, 1973. On January 7, 1974, Hoyt received a letter from an attorney in La Jolla, California, who was handling Cope's estate. The letter informed Hoyt of Cope's death and requested Hoyt to sign a "Certificate of Subscribing Witness to Will," which he did. The next communication Hoyt received from the attorney was a letter dated April 5, 1974. In part the letter stated:

"I am enclosing a copy of Mrs. Cope's will dated January 30, 1962, which I believe you prepared for Mrs. Cope. I'm also enclosing a copy of the Constance Maria Gummey will dated February 10, 1920. In article SIXTH of Mrs. Cope's will, she exercises the general Power of Appointment granted to her under the Gummey Will, Article FIFTH. As I read section 2041 of the Internal Revenue Code, property subject to a general power of appointment created on or before October 21, 1942, (as in this case) is includible in the gross estate of the holder of the power only if the holder exercises the power by will. Since the disposition of the Trust assets in failure of exercise of the power was equally among Mrs. Cope's sons and since Mrs. Cope exercised the power to provide an equal disposition among her sons, *I wonder what the point was in having her exercise the power in her will. It seems as though it has simply created substantial additional tax in her estate which could have been avoided had she said nothing about the power, in her will. Any thought or information you have on this point would be greatly appreciated.*" (emphasis added).

Hoyt responded on April 11, 1974, stating in part:

"I am aware of the potential risks involved in exercising powers and I would assume that the banks that were handling her parents' estates would have reviewed the Will of January 30, 1962, and pointed out the undesirable features re exercising the power of appointment."

* Honorable William G. East, Senior United States District Judge of the District of Oregon, sitting by designation.

Hoyt did not hear from the attorney again until September 4, 1974. In the interim, the professional liability policy issued by St. Paul expired on April 27, 1974. In his letter of September 4, the attorney for the Cope estate accused Hoyt of gross negligence in preparing the will and made demand upon him for "all sums paid or which may hereafter become due or payable by the estate of Constance Marie Cope or the beneficiaries of the Constance M. Gummey trust on account of United States estate taxes and California inheritance taxes attributable to the inclusion of the Gummey trust assets in the Cope taxable estate." Hoyt responded denying liability.

Upon receipt of a summons and complaint on May 20, 1975, Hoyt notified his local insurance agent, Robert Rissi, and forwarded all the documents to appellee. Thereafter, on June 3, 1975, Rissi notified Hoyt by letter that the insurance company was accepting the case and that it had been referred to a Phoenix attorney for defense.

On July 15, 1975, Rissi wrote Hoyt denying coverage and instructed the company attorney to withdraw from Hoyt's defense. Hoyt retained independent counsel as defense counsel in the state court malpractice action. The retained counsel recommended that Hoyt seek a United States district court declaratory judgment, and thereupon sought a stay of the state court proceedings pending the outcome of such declaratory judgment action. This diversity action was filed on December 15, 1976, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. After discovery had been substantially completed, both parties moved for summary judgment. The district court granted appellee's motion and dismissed the action on April 8, 1977.

■ The question presented is whether the April 5, 1974, letter from the attorney in the Cope estate was a claim within the "if claim is made" clause of the 1973 policy. If it was, Hoyt was covered by the terms of the 1973 policy. If it was not, since the professional services were not performed within the policy period of either the 1973 or the 1974 policy, Hoyt was without coverage.

In our judgment the letter of April 5, 1974, did not constitute a claim. It was a request for information and explanation. If Hoyt was put on notice of any kind it was only that a claim might be expected to follow if the estate attorney was not satisfied with the explanation. In our view an inquiry cannot be transformed into a claim or demand depending in each case on the reasonable expectations of the insured— whether he should reasonably have been satisfied that the explanation would be accepted as justification for the questioned conduct or should reasonably have expected that it would not. Such a rule would firmly write uncertainty of coverage into every policy.

It is argued that *J. G. Link & Co. v. Continental Casualty Co.*, 470 F.2d 1133 (9th Cir. 1972), *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973), should be read to hold that that is in truth the case— that the word "claim" in this context is inherently ambiguous and that the policy should be construed against the insurer. We do not so read that case. There an architect suffered suit and judgment for negligent design and construction of a funeral home, resulting in a squeaking floor—a condition that could well prove an embarrassment to such an establishment. He was insured by an architect's errors and omissions policy that provided (as does the policy here) that claim must be made on the insured within the policy period. No claim in the form of a demand was made until suit was brought after expiration of the policy period. However, the defect had been called to the architect's attention during the policy period.

This court there read two provisions of the policy as related to each other: (1) The "if claim is made" clause; (2) The provision that notice be given to the insurer when claim was made. The latter provided that "[A]s soon as practicable after *receiving information as to his alleged errors*, omission or negligent acts" the insured should give notice to the company. 470 F.2d at

1135 (emphasis added). From this the court concluded that the receipt of information *could* constitute a claim requiring notice, but that the "if claim is made" clause was ambiguous because the kind and extent of information needed to trigger the duty to give notice was not spelled out: "[T]he nature of the information required to secure coverage is far from clear." *Id.* at 1137.

In the instant case the policy's notice clause also serves to cast light on the meaning of the "if claim is made" clause. Condition C(2) of the policy reads:

> "If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

Thus, the "claim" contemplated is unambiguously in the nature of a demand or notice.

We conclude that the 1973 policy did not provide coverage.

■■■ Hoyt also contends that appellee is estopped to deny coverage because of its having undertaken Hoyt's defense without a specific reservation of rights. We disagree. An insurance company may withdraw from a defense if the insured is not prejudiced; he must be left an adequate opportunity to defend his case. *See Boulet v. Miller Mutual Ins. Assoc.,* 362 F.2d 619 (8th Cir. 1966). Here, appellee determined to withdraw from appellant's defense within sixty days of receiving the complaint. At the time the attorney furnished by appellee moved to withdraw, appellant had retained independent counsel, discovery had not been conducted, and a trial date had not been assigned. It does not appear from these facts that appellant was prejudiced in

any way by appellee's decision to withdraw from the case.

Judgment affirmed.

EAST, Senior District Judge, dissenting:

I respectfully dissent from the conclusions reached by the majority, except as to the estoppel issue.

It is well recognized under Arizona law that any ambiguities in an insurance contract are construed against the insurer and in favor of the insured. *State Farm Mutual Automobile Insurance Co. v. O'Brien,* 24 Ariz.App. 18, 535 P.2d 46 (1975); and *Mesa Oil Co. v. Business Men's Assurance Co. of America,* 476 F.2d 491, 492–93 (9th Cir.), *cert. denied,* 414 U.S. 1003, 94 S.Ct. 358, 38 L.Ed.2d 239 (1973), applying Arizona law.[1] Hoyt points out that the phrase "if claim is made" is not defined anywhere in the policy. He, therefore, urges that St. Paul is responsible for any inherent ambiguity in the meaning and consequences of that term and must be prepared to defend and answer any claim against an insured that arguably comes within the policy's provisions. Hoyt maintains the April 5th letter was within a broad definition of the meaning of a "claim"; *i. e.,* a mere notice that there may have been some negligence on his part in rendering a legal service.

While I do not fully subscribe to Hoyt's expansive definition of a "claim," I do agree with Hoyt's contention that a claim of professional malfeasance was made against him through the content of the April 5th letter well within the policy period. The April 5th letter clearly asserts a claimed financial loss to the Cope estate resulting from a questioned professional practice by Hoyt. It would be foolhardy for any reasonable attorney to interpret Henry's polite request for Hoyt's thinking or information on the matter as other than a claim to justify the challenged profession-

---

1. However, as the Arizona Court of Appeals cautions:

> "While it is true that ambiguities will be construed against the insurer, . . . when a policy's meaning and intent are clear, it is not the prerogative of the courts to create ambiguities where none exist or to rewrite the contract in attempting to avoid

harsh results. . . . ." (Citations omitted). *Harbor Ins. Co. v. United Services Auto Ass'n,* 114 Ariz. 58, 559 P.2d 178, 181 (1978). *See also Pawelczyk v. Allied Life Ins. Co.,* (App.), 120 Ariz. 48, 583 P.2d 1368, 1371–72 (1978), and *Schwab v. State Farm Fire & Cas. Co.,* 27 Ariz.App. 747, 558 P.2d 942, 946 (1976).

al practice or pay up.[2] Hoyt's response of April 11 acknowledged the risk involved and sought to place the blame elsewhere.

The majority attempts to distinguish the rationale of this Court's opinion in *J. G. Link & Co. v. Continental Casualty Co.,* 470 F.2d 1133 (9th Cir. 1972), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973), from the facts here. I am convinced that the rationale of *J. G. Link & Co.* dictates a reversal of the District Court's summary judgment. The majority's attempt to distinguish the holding in *J. G. Link & Co.* is based solely upon their reading of the April 5th letter. I read that letter as an explicit notice of a "defect" in Hoyt's professional advice and product. Only a naive attorney and his insurer would think the adverse assertion would evaporate with the coming dawn. The letter was sufficient to elicit Hoyt's lame excuse of April 11.

St. Paul did not raise the defense of untimely notice of the claim made. The District Court did not reach that issue nor should we. If the majority does not wish to squarely meet and disagree with the rationale of *J. G. Link & Co.,* they should seek a reversal of that precedent.

---

2. *See J. G. Link & Co. v. Continental Casualty Co.,* 470 F.2d 1133 (9th Cir. 1972), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973), a Montana diversity action, which involved an analogous factual setting. Link, an architect, was covered by an insurance policy which provided coverage "if claim . . . is first made against the insured during this policy period." During the period covered by the policy, complaints relating to squeaks in the floors were brought to Link's and the contractor's attention. Link also attended a later meeting where the squeaking floors were discussed. This Court found two ambiguities. With regard to the second stated ambiguity, the Court held that "the insured would be entitled to coverage since the ambiguity of the 'if claim' provision is to be construed against the insurer." *Id.* at 1138. *See Cornell, Howland, Hayes & Merryfield, Inc. v. Continental Casualty Co.,* 465 F.2d 22 (9th Cir. 1972); *Brander v. Nabors,* 443 F.Supp. 764 (N.D.Miss.), *aff'd,* 579 F.2d 888 (5th Cir. 1978).